**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 06-308 (RBW) |
| ) | |
| DAMON RASHAWN DIXON ) | |
| ) | |
| **Defendant** ) | |
| _____) | |

**DEFENDANT'S MOTION TO REVOKE
PRETRIAL DETENTION ORDER AND TO PLACE
DEFENDANT UNDER THE HEIGHTENED SUPERVISION PROGRAM**

Defendant Damon Rashawn Dixon, by and through undersigned counsel, respectfully moves this Court, pursuant to 18 U.S.C. § 3145(b), to revoke Magistrate Judge Alan Kay's Pre-Trial Detention Order entered on November 6, 2006, and instead to order that Mr. Dixon be released pending trial under the strict conditions imposed by the District of Columbia Pretrial Services Heightened Supervision Program. In support of this motion, Mr. Dixon submits the following.

A.   Background

Defendant was arrested in the instant matter on November 2, 2006. On November 6, 2006, following a detention hearing, Magistrate Judge Alan Kay ordered Mr. Dixon held without bond.

B.   Legal Standard

If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. 18 U.S.C. § 3145(b). The review of Magistrate Judge

Kay's Order is *de novo,* and the Court is free to use in its analysis any evidence or rationale different than what Magistrate Judge Kay relied upon on November 6, 2006. *United States v. Karni,* 298 F. Supp. 2d. 129 (D.D.C. 2004).

Under the Bail Reform Act, a person charged with an offense shall be released on his personal recognizance or an unsecured bond, unless the Court determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142. If, as in this case, the defendant is charged with a narcotics offense that carries a maximum term of 10 years or more, the Bail Reform Act provides a rebuttable presumption that no condition will reasonably assure the safety of the community. 18 U.S.C. § 3142(e).

Notwithstanding, this Court must still balance various factors to determine whether conditions of release could be imposed to assure the safety of the community and the defendant's appearance in court. These factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

A finding that no condition or combination of conditions will reasonably assure the appearance of the defendant must be supported by a preponderance of the evidence. *United States v. Simpkins,* 826 F.2d 94, 96 (D.C. Cir. 1987).[1] A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported

---

[1] Mr. Dixon made no attempt to leave the jurisdiction after being arrested and released in 2005. The government acknowledged that it would be "stretching" to suggest that Mr. Dixon was a flight risk and presented no arguments on this issue at the November 6, 2006 hearing in front of Magistrate Judge Kay.

by clear and convincing evidence. 18 U.S.C. § 3142(e).

    B.    <u>Argument</u>

The facts and circumstances in the instant case call for Mr. Dixon's release pending trial. The government has conceded that Mr. Dixon is not a flight risk and a review of the factors set forth in 18 U.S.C. § 3142(g) disproves the assumption that Mr. Dixon poses a danger to the community.

    1.    <u>Nature and Circumstances of the Offense</u>

Mr. Dixon stands charged with conspiring to distribute 100 grams or more of phencyclidine ("PCP"), from on or about July 2005 until October 12, 2006. Mr. Dixon is also charged with possessing PCP with the intent to distribute it on November 1, 2005. Mr. Dixon was first arrested in this matter on the charge that is now set forth in Count 2 of the Indictment on November 1, 2005. Mr. Dixon was released after three days in custody when the government elected to dismiss the charges against him without prejudice.

    2.    <u>The Weight of the Evidence Against Mr. Dixon</u>

The evidence of the defendant's guilt proffered by the government is not compelling. *United States v. Smith,* 79 F.2d 1208, 1210 (D.C. Cir. 1996)(The government may present evidence in support of a request for detention by way of proffer.). Undersigned counsel has reviewed the discovery provided by the government in this case. Mr. Dixon does not appear on any of the surveillance videotapes, nor is his voice recorded on any of the hours of wiretaps. Assistant United States Attorney Elisa Poteat has kindly confirmed that this is the government's understanding as well.

The government contends that upon his second arrest on the charges set forth in Count 1 of the Indictment, Mr. Dixon, who had previously invoked his right to remain silent when

arrested one year earlier, for some unknown reason voluntarily waived his *Miranda* rights and gave a lengthy statement implicating himself in every facet of the alleged conspiracy. This assertion is undercut by the fact that law enforcement agents failed to make a video or audiotape of this so-called confession. They also neglected to have Mr. Dixon write the confession in his own hand or even sign a typed version.

In an effort to bolster an already weak charge, the government points to several unnamed witnesses whom it alleges can tie Mr. Dixon into the conspiracy. These witnesses have undoubtedly cut deals in exchange for their testimony. As a result, they each have a strong motive to fabricate their stories. This expected informant testimony is undercut by the fact that Mr. Dixon is not on the hours of surveillance video or wiretaps collected in the instant case. Finally, the government points to the fact that agents recovered over $3,000 from Mr. Dixon. About one month prior to his arrest, Mr. Dixon sold a car for about $3,500.

The government cannot point to the evidence against Mr. Dixon arising from the November 1, 2005 arrest to support their case for detention. The government dismissed that case. Certainly, the government would not knowingly release a dangerous man into the community.

### 3. History and Characteristics of Mr. Dixon

Mr. Dixon is a life-long resident of the District of Columbia. He is the father of five children. Larry Epps (202-651-0163), a partner in the home improvement company Epps, Patterson & Lassiter, has confirmed that he would employ Mr. Dixon if released in this case.

The Pretrial Services Report ("PSR") in this case states that Mr. Dixon was convicted of possession of marijuana in 1999 and for assault & batter and grand larceny in 2000. The PSR provided no further information regarding the 2000 convictions. Undersigned counsel obtained

the judgment and commitment order in those cases. These convictions arose out of the same event. On the charge of grand larceny (felony), Mr. Dixon was sentenced to 12 months imprisonment. On the charge of assault & battery (misdemeanor), Mr. Dixon was sentenced to 30 days imprisonment. The sentences were ordered to run consecutively, but the court suspended all but four months of the grand larceny sentence. These details indicate that the 2000 convictions were not as serious as one might suspect from the PSR.

Mr. Dixon's mother is a well-respected employee of the United States Attorney's Office for the District of Columbia. His mother verified that he had been living with her at the time of his arrest. His mother has also confirmed that her son can continue to live with her, if released in this case.

    C.    <u>Conclusion</u>

The government cannot show by clear and convincing evidence that detaining Mr. Dixon without bond is necessary to assure the safety of the community. The government clearly did not view Mr. Dixon as a threat to the community when it released him after his first arrest. Any effort to argue otherwise now must be viewed with suspicion.

Under the Heightened Supervision Program, Mr. Dixon will be subjected to electronic monitoring. He must adhere to a curfew. He will be subjected to drug testing. The government's position that Mr. Dixon would be a risk to engage in illegal drug dealing under these conditions is untenable. Mr. Dixon's movements will be closely monitored at all times.

The conditions proposed by Mr. Dixon are more onerous than those proposed by the Pretrial Services Agency ("PSA") on November 2, 2006. The PSA recommended that Mr. Dixon report for program placement and that he report by telephone once per week.

Wherefore, Mr. Dixon respectfully asks the Court to revoke Magistrate Judge Kay's pre-trial detention order of November 6, 2006.

Respectfully submitted,

_____/s/_____
STEVEN J. McCOOL
D.C. Bar No. 429369
MALLON & McCOOL, LLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
(202) 393-7088


_____/s/_____
DANIEL T. McNAMARA
D.C. Bar No. 494834
MALLON & McCOOL, LLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
(202) 393-7088

Counsel for Damon Dixon

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 4TH day of March 2007, the foregoing was filed electronically and to the best of my knowledge, information and belief, all defendants and government counsel will be notified through the Electronic Case Filing System.

                                                         _____/s/_____
                                                         STEVEN J. McCOOL

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Criminal No. 06-308 (RBW)** |
| ) | |
| **DAMON RASHAWN DIXON** ) | |
| ) | |
| <u>     **Defendant.**              </u> ) | |

**ORDER**

Upon consideration of Defendant's Motion to Revoke Pre-Trial Detention Order and to Place Defendant under the Heightened Supervision Program and Incorporated Memorandum of Points and Authorities, the government's response thereto, and the entire record in this matter, it is this _____ day of March 2007, hereby

**ORDERED**, that Defendant's motion is granted; and it is further

**ORDERED**, that Magistrate Judge Kay's Pre-trial Detention Order dated November 6, 2007 is hereby revoked; and it is further

**ORDERED**, that Defendant is released under the terms and conditions of the District of Columbia Pretrial Services Heightened Supervision Program.

_____
The Honorable Reggie B. Walton,
United States District Court Judge