IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
        Plaintiff,

v.                                       Criminal No.   06-308 (RBW)

DAMON RASHAWN DIXON,
        Defendant.

RESPONSE OF THE UNITED STATES
TO DEFENDANT'S MOTION TO REVOKE
PRETRIAL DETENTION ORDER AND TO PLACE
DEFENDANT UNDER HEIGHTENED SUPERVISION PROGRAM

Now comes the United States of America and Alberto R. Gonzalez, Attorney General for the United States, by Paul T. Camilletti, Special Attorney to the United States Attorney General, and responds to defendant's motion for revocation of the Court's pretrial detention order and to place defendant under the heightened supervision program as follows:

1.        The United States opposes defendant's motion.

2.        Defendant has failed to rebut the presumption in favor of detention.

A.  FACTUAL BACKGROUND

1.        On November 1, 2005, defendant was the subject of a routine traffic stop by officers of the Metropolitan Police Department.

2.        During the stop, defendant was found to be in possession of 388.4 grams of Phencyclidine (PCP) contained in two "Real Lemon" bottles and one glass vial.

3. Because of a conflict in the United States Attorney's office for the District of Columbia,[1] the Department of Justice appointed two Assistant United States Attorneys from the Northern District of West Virginia as special prosecutors.

4. On October 12, 2006, a grand jury sitting in the District of Columbia returned an indictment charging defendant with a conspiracy to possess with the intent to distribute and to distribute in excess of 100 grams of PCP or 1 kilogram or more of a mixture or substance containing a detectable amount of PCP (Count 1) and possession with intent to distribute 388.4 grams or more of a mixture and substance containing a detectable amount of PCP (Count 2).

5. On November 1, 2006, defendant was arrested on the indictment. At the time of his arrest, defendant knowingly and voluntarily waived his *Miranda* rights and gave a statement to law enforcement officers admitting his involvement in both of the offenses charged in the indictment, as well as to his continued drug trafficking following the 2005 traffic stop.

6. At a detention hearing held on November 6, 2006, before Magistrate Judge Kay, the United States presented evidence by way of a proffer as to the traffic stop of defendant when 388.4 grams of PCP and $5,675.00 were seized from the defendant on November 1, 2006 when Dixon related that he was still involved in PCP distribution, primarily in half gallon quantities. Dixon further related that the $3,374.00 seized on his November 1, 2006 arrest came from PCP sales. *See United States v. Karni,* 298 F.Supp.2d 129, 131 (D.D.C. 2004) ("[T]he government may present evidence in support of the criteria listed above by way of proffer."), *citing United States v. Smith,* 79 F.3d 1208, 1210 (D.C.Cir.1996) (allowing Government proffer).

---

[1] Defendant's mother is an employee of that office.

7.  In response, defendant proffered that he had no serious criminal history and could stay with his mother who worked for the United States Attorney in Washington, D.C.

8.  The Court found that defendant had not rebutted the presumption in favor of detention and ordered that defendant remain in custody.

9.  Defendant now seeks to have that order revoked by this Court. Defendant's position however, is supported neither factually nor legally.

## B.  LEGAL STANDARD

1.  The United States would certainly agree with defendant that he is entitled to a *de novo* review of the issue of detention. *See* Title 18, United States Code, Section 3145(b); *United States v. Karni, supra* at 130 ("The Court notes at the outset that its review of the Magistrate's decision is *de novo,* and the Court is free to use in its analysis any evidence or a rationale different than what the Magistrate relied upon.").

2.  Likewise, this Court is not required to ignore the findings made by the Magistrate Judge either.

3.  Section 636(b)(1)(C) of Title 28, United States Code [Federal Magistrates Act] provides, in pertinent part, that following an evidentiary hearing and the filing of the findings and recommendations by a magistrate judge, the district judge

> ....... shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

4.  The Court here is entitled to consider any and all evidence, as well as the findings and recommendations and rulings by the Magistrate Judge, in determining the issue before it.

5.      Therefore, the United States would submit at the outset, that the Magistrate Judge's determination was correct, that the Court properly considered the factors enumerated in § 3142(g) and correctly concluded that no condition or combination of conditions would reasonably assure the safety of the community.

6.      Defendant now offers nothing new or different in the way of evidence which would call the Magistrate Judge's decision in to question.

## C. ARGUMENT

1.      "The Bail Reform Act requires that a defendant be detained prior to trial if there is clear and convincing evidence that no conditions placed upon his release would reasonably assure the safety of the community." *See* 18 U.S.C. § 3142 (e) & (f); *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996); *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

2.      Certainly, "[i]n determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community, the Court must conduct a hearing at which it must consider the following factors:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including-
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g); *United States v. Karni, supra* at 130-31.

3.  In addressing the first two factors, first, there is a statutory rebuttable presumption in favor of pretrial detention[2] which is triggered once probable cause is established.  *See* 18 U.S.C. § 3142(e).

4.  Second, the return of the indictment by the grand jury establishes probable cause of the commission of the offenses by defendant.  *United States v. Smith,* 79 F.3d 1208 (D.C. 1995).

5.  Defendant here did not rebut the statutory presumption at his initial detention hearing. *See United States v. Alatishe,* 768 F.2d 364, 371 (D.C.Cir.1985) (presumption imposes a burden on defendant to offer some credible testimony contrary to the statutory presumption), *citing United States v. Jessup,* 757 F.2d 378, 389 (1st Cir.1985).

6.  Furthermore, defendant does not now present any evidence which was not available to the Magistrate Judge at the time of the initial hearing.

7.  At best, defendant simply attempts to discount the weight of that evidence by saying that the evidence against him is not compelling.  The United States respectfully disagrees.

8.  Again, the defendant was caught in possession of a significant quantity of PCP.

9.  The fact that defendant does not appear on surveillance recordings or wiretaps is hardly exculpatory.

---

[2] Defendant is charged with two violations of the Controlled Substances Act, each of which carry a penalty of more than 10 years imprisonment. Count 1 carries a 10 years to life penalty and Count 2 carries a 5 years to 40 years penalty.

10. Furthermore, while defendant attempts to question defendant's post arrest *Miranda* waiver and subsequent confession, such statement has not been suppressed or even challenged at this point. The voluntariness of defendant's statements is supported by his written waiver of rights.

11. As noted above, in that statement, defendant admitted to the conspiratorial conduct alleged in the indictment, told the agents the identity of the source of the PCP in his possession on November 1, 2005, indicated that it was for distribution and admitted that he had continued to sell drugs from that date until his arrest following the indictment. Finally, many members of the same conspiracy are cooperating and have identified defendant as a participant and have described his role in the charged offenses. The $3,000.00 found on defendant's person in November of 2005 constituted the proceeds of drug sales.

12. As for his personal history, he has a prior drug conviction and an conviction for a crime of violence which occurred about five years prior to the instant criminal activity.

13. Defendant sees as significant that his mother is an employee of the United States Attorney's Office in the District of Columbia. The United States also believes that fact is significant.

14. Defendant claims that he was residing with his mother during the time period he was selling PCP and now says that his mother is willing to have him continue to live with her if released.

15. The problem with that argument is that defendant's mother was unable in 2005 and 2006 to keep her son from violating the law and defendant offers nothing now to indicate that those circumstances have changed.

16. While defendant claims that he is willing to be closely monitored 24 hours a day and submit to a curfew, the fact remains that such monitoring as proposed would not be able to prevent

defendant from continuing his drug trafficking.  He could easily sit in his mother's home while she is at her employment and sell PCP.  Electronic monitoring would certainly not impede those efforts.

17.     As for defendant's release from custody following the traffic stop, defendant sees that as significant in his favor and suggests that an argument by the United States to the contrary must be viewed with suspicion.  Defendant however, fails to explain why such disagreement would be suspect.  Obviously, defendant's continued drug trafficking in 2006 demonstrates that no conditions can present future drug trafficking if he is released.

    Respectfully submitted,

    ALBERTO R. GONZALEZ
    UNITED STATES ATTORNEY GENERAL


By:     _____
    Paul T. Camilletti
    Special Attorney to the
    United States Attorney General

CERTIFICATE OF SERVICE

I, Paul T. Camilletti, hereby certify that the foregoing RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION TO REVOKE PRETRIAL DETENTION ORDER AND TO PLACE DEFENDANT UNDER HEIGHTENED SUPERVISION PROGRAM was electronically filed with the Clerk of the Court using the CM/ECF system and served on the parties as follows:

>Mr. Steven J. McCool
>Attorney at Law
>1776 K. Street, N.W., Suite 200
>Washington, DC 20006

on this 8th day of March, 2007.

/s/ Paul T. Camilletti
Paul T. Camilletti
Special Attorney to the
United States Attorney General