**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Criminal No. 06-308 (RBW)** |
| | ) | |
| DAMON RAWSHAWN DIXON | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT DAMON DIXON'S MOTION FOR
DISCLOSURE OF *BRADY/GIGLIO* INFORMATION AND
MOTION FOR EARLY PRODUCTION OF *JENCKS* MATERIAL AND
<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPPORT THEREOF</u>**

Defendant Damon Dixon, by and through undersigned counsel, respectfully moves this Honorable Court for disclosure of *Brady/Giglio* Information and requests <u>timely</u> disclosure of all *Brady/Giglio* material. Mr. Dixon also moves this Honorable Court for the entry of an Order requiring <u>early</u> disclosure of *Jencks* material, which ordinarily would not be produced until after a witness has testified at trial. For the reasons set forth below, Mr. Dixon respectfully requests that all *Jencks* material (whether relevant to trial or suppression witnesses) be disclosed 30 days before the suppression hearings and all *Brady/Giglio* material be disclosed immediately.

**I.    <u>Mr. Dixon's Specific Requests for Exculpatory Evidence.</u>**

Mr. Dixon requests the following exculpatory evidence and asks that the information requested be produced immediately to the defense.

1. Any evidence in the possession of the government, the existence of which is known, or by the exercise of due diligence may become known to the government, tending to show that any individuals who may be called as government witnesses have given conflicting or contradictory statements regarding their involvement in this case, the involvement of Mr. Dixon, and/or the involvement of any alleged associate, accomplice, or co-conspirator.

1

2.    Any and all evidence in the possession of the government, the existence of which is known, or by the exercise of due diligence may become known to the government, which would tend to show that any informant, co-conspirator (indicted or unindicted), aider and abettor, associate, or other individual alleged by the government to have been in a conspiracy with Mr. Dixon, transported, produced, distributed, sold, transferred, delivered or possessed any illegal narcotic substance.

3.    The full record of any arrests, pending cases, and criminal convictions of any witness whom the government intends to call at trial, including any informants, accomplices, witnesses, or unindicted co-conspirators.

4.    Any evidence or records of any suspected wrongdoing or ongoing investigations in this or any other jurisdiction (state or federal) of any witness whom the government intends to or contemplates calling at trial.

5.    A full and complete statement of all promises, considerations, rewards, or inducements made by the government, its prosecutors, agents or agencies to induce or encourage any individual's testimony, cooperation or provision of information, wherein the government has agreed, either with the individual, their counsel, agent or representative, to any of the following:

a)  not to prosecute said person for any crime or crimes;
b)  not to prosecute a third party for any crime or crimes where the reason for not prosecuting the third party is a consideration to the person;
c)  to provide a formal grant of statutory immunity, or to provide an informal assurance that the person will not be prosecuted in connection with any testimony, cooperation, or information given;
d)  to recommend leniency or a particular sentence for any crime or crimes for which the person stands convicted or is expected to be convicted;
e)  to comply with any prior agreements although said witness may have previously violated a part of their agreement;
f)  to recommend or not oppose a reduction of the offense level of the person under the United States Sentencing Guidelines for acceptance of responsibility;

g) to recommend to the sentencing authority under the United States Sentencing Guidelines a downward departure from the guidelines if that person provides substantial assistance to authorities;

h) to recommend or not oppose any downward departures or offense level reductions for the person under the United States Sentencing Guidelines;

i) to seal any plea or plea agreement of that person;

j) to provide favorable treatment or consideration, including but not limited to, money, expenses, subsistence, a job, a new location, a new start, etc. to the person or to friends or relatives of the person in return for that person's testimony, cooperation, or provision of information;

k) to make any beneficial recommendation, regarding the person to any state or federal agency;

l) to cooperate with any state law enforcement agency and that agency's agreement not to prosecute said person for any crime or crimes prohibited by state law; or

m) to make any other recommendation of benefit, or give any other consideration to the person or friends or relatives of said person;

n) to provide a statement to, or speak with, any law enforcement agency, prosecution official or court (state or federal) concerning the witness' assistance or cooperation.

6. Notice, including date, amount and method (cash or check) and purpose of any monies paid to any witness, operative, or informant of the government in return for information, their services or as a reward and/or for the purported payment of expenses and/or for any purported obligation of any such witness or informant.

7. Any writings, canceled checks, receipts, vouchers or other documents generated as a result of any promises, statements, agreements, understandings or arrangements by which any of the matters listed in paragraphs 5 and 6 were provided to the person, or by which records were kept of such by the government.

8. Any evidence in the possession of the government that would tend to prove or reveal a bias or motive of any witness that the government intends or contemplates calling at trial.

9. Any and all threats of prosecution or any statements regarding the magnitude of penal liability made to any witness that the government intends or contemplates calling at trial, or any

3

witness called before a federal grand jury, by any agent or employee of the federal government or by an state law enforcement or prosecutorial agency working or cooperating with the government.

10.   A list of all persons (and their counsel) who were asked by the government or its representatives whether they or their clients would and/or could implicate the defendant in any criminal wrongdoing.

11.   Any evidence of past or present drug or alcoholic ingestion or dependency by any witness whom the government intends or contemplates calling at trial.  If any medical, hospital, or law enforcement records exist, which disclose such ingestion or dependency or the treatment thereof, it is requested that the source and location of such records be provided and/or disclosed. If no such records exist, but others have witnessed such ingestion or dependency, it is requested that the names and addresses of such persons be disclosed.

12.   Any evidence of psychiatric hospitalization, psychiatric treatment or mental disease or defect or physical disorder of any witness whom the government intends or contemplates calling at trial.  If any medical or hospital records exist, it is requested that the source and locations of such records be provided and/or disclosed.  If no such records exist, but others have observed such disease, defect or disorder, it is requested that the names and addresses of such persons be disclosed.

13.   Any evidence of polygraph or "lie-detector" tests administered to any witness whom the government intends or contemplates calling at trial, and the results of any such tests, including any evidence regarding the refusal of such persons to take any requested polygraph or "lie-detector" tests.

14.    Any evidence that may be used to impeach a witness at the trial in this case, particularly but not exclusively, inconsistent statements of a witness or between witnesses.

## II.    Due Process Requires the Immediate Disclosure of Exculpatory Evidence.

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that due process forbids a prosecutor from suppressing "evidence favorable to an accused upon request where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.*, at 87.  *See Giglio v. United States*, 405 U.S. 150 (1972); *United States v. McCrane*, 527 F.2d 906 (3d Cir. 1975), *aff'd after remand*, 547 F.2d 205 (1976). The Supreme Court has also emphasized that impeachment evidence, as well as exculpatory evidence, falls within the *Brady* rule.  *United States v. Bagley*, 473 U.S. 669, 678 (1985). Such evidence, if disclosed and used effectively, may make the difference between conviction and acquittal. *See Napue v. Illinois*, 360 U.S. 264 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.").  In acknowledging that the prosecution has a duty to disclose any favorable evidence that could be used at trial, it is frequently overlooked that the prosecution also has a duty to disclose any favorable evidence that could be used "in obtaining further evidence." *Giles v. Maryland*, 386 U.S. 66, 74 (1967).  Additionally, favorable evidence need not be competent evidence or evidence admissible at trial.  *United States v. Gleason*, 265 F. Supp. 850, 886 (S.D.N.Y. 1967); *Sellers v. Estelle*, 651 F.2d 1074, 1077 n.6 (5th Cir. 1981)(evidence suppressed was material to the preparation of petitioner's defense, regardless whether it was intended to be admitted into evidence).

5

The Supreme Court has never precisely pinpointed the time at which the disclosure under *Brady* must be made. It is abundantly clear, however, that disclosure by the government,

> must be made at such a time as to allow the defense to use favorable material effectively in the *preparation* and presentation of its case, even if satisfaction of these criteria requires pre-trial disclosure.

*United States v. Pollock*, 534 F.2d 964, 973 (D.C. 1976). *Accord United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988); *see United States v. Starusko*, 729 F.2d 256, 261 (3d Cir. 1984) (Noting that *Brady* information which will require defense investigation or more extensive defense preparation should be disclosed at an early stage of the case.); *see, e.g., United States v. Recognition Equipment, Inc.*, 711 F. Supp. 1, 14 (D.D.C. 1989)(Ordering immediate disclosure of evidence regarding criminal records and other impeachment information for government witnesses, statements to the effect that any of the defendants were not members of the charged conspiracy, evidence supporting the defendants' defenses). Manifestly a more lenient disclosure burden on the government would drain *Brady* of all vitality. *United States v. Elmore*, 423 F.2d 775, 779 (5th Cir. 1970).

The disclosures requested herein should be made immediately so that appropriate defense preparation can be made. To make effective use of the information requested herein, it is essential to test the reliability of this information through thoughtful consideration and thorough investigation. This cannot be accomplished if disclosure is delayed.

It would be fundamentally unfair for Mr. Dixon to receive this information shortly before or after the commencement of trial. If the Court adopts this proposal, Mr. Dixon will not be able to present an adequate opening statement. The case against Mr. Dixon is based almost entirely on the anticipated testimony of criminals. Thus, Mr. Dixon will be profoundly prejudiced unless

he discovers this information with sufficient time to consider, investigate and test the reliability of the evidence against him.

Mr. Dixon is entitled to make an opening statement. This is true whether or not he puts on evidence. *Wright v. United States*, 508 A.2d 915, 919 (D.C. 1986). A defense attorney's opening statement, however, must remain "within the bounds of propriety and good faith." *Hallinan v. United States*, 182 F.2d 880, 885 (9th Cir. 1950). It would be unethical, therefore, for counsel to simply predict during opening statement what the evidence will show.

Moreover, jury studies have shown that as many as 80 to 90 percent of all jurors have reached their ultimate verdict during or immediately after opening statements. *See* Alfred S. Julien, *Opening Statements* § 1.01, at 2 (Supp. 1996)(Jurymen . . . have been prone to say that once the opening statements were made there was nothing left to the case.) and Donald E. Vinson, *Jury Trials: The Psychology of Winning Strategy* 171 (1986)("[A]s many as 80 to 90 percent of all jurors have reached their ultimate verdict during or immediately after opening statements."); *Symposium: Communicating with Juries: Timing of Opinion Formation by Jurors in Civil Cases: An Empirical Examination,* 67 Tenn. L. Rev. 627 (2000). Therefore, it is critical that Mr. Dixon be given a full opportunity to assist the jurors in understanding the evidence presented. *See Best v. District of Columbia*, 291 U.S. 411, 415 (1934)(the purpose of an opening statement is to assist the jury in understanding the evidence to be presented); *accord United States v. Dinitz*, 424 U.S. 600, 612 (1976)(Burger, C.J. concurring)(purpose of opening statement is "to state what evidence will be presented, to make is easier for the jurors to understand what is to follow and to relate parts of the evidence and testimony to the whole"). Given the nature of the anticipated evidence against Mr. Dixon and the expected duration of his trial, failure of the government to provide such information immediately will deny him the opportunity to

adequately prepare for this case, which constitutes a denial of due process and effective assistance of counsel.

Accordingly, in order to afford the defendant a meaningful opportunity to contest the charges against him by confronting his accusers with the effective assistance of counsel in a fashion which will not jeopardize his standing before the jury, Mr. Dixon requests that the government be ordered to disclose all *Brady/Giglio* material to defendant's counsel immediately.

### III.    Mr. Dixon's Specific Requests Concerning Government's Use of Informants, Operatives and Cooperating Individuals.

Mr. Dixon requests the following exculpatory evidence concerning the government's use of informant's, operatives and cooperating individuals who participated in any way or who are material to any of the events charged in the indictment.  Defendant requests that the identities of any such class of person and the information requested below be produced immediately to the defense.

1.  Whether such informant, witness, confidential source or cooperating individual was suspected, apprehended or convicted of any crime(s) at any time during which he/she agreed to gather information on behalf of the United States or any other government agency.

2.  What crime(s) or other breaches or law (including jurisdiction and case number) such informant, witness, confidential source or cooperating individual had committed or was suspected of having committed at any time during which he/she agreed to gather information on behalf of the United States or any other governmental agency.

3.  Whether any potential or actual criminal charges against any informant, witness, confidential source or cooperating individual were abandoned, altered, or otherwise disposed of

upon his/her agreement to gather information on behalf of the United States or any other governmental agency.

4.    What financial arrangements existed or exist between any informant, witness, confidential source or cooperating individual and the agencies of the United States, the District of Columbia, the State of Maryland, the Commonwealth of Virginia, or any other state, including but not limited to:

> (a)    Any sums of money paid to any informant, witness, confidential source or cooperating individual; and
>
> (b)    Copies of any vouchers for payment to any informant, confidential source, cooperating individual or witness.

5.    The names, addresses, and criminal records of any informant, witness, confidential source, or cooperating individual to be called as a witness for the government.

6.    The substance of any plea bargain(s) entered into by any agency of the United States, the District of Columbia, the State of Maryland, the Commonwealth of Virginia, or other jurisdictions, and the authority for any such plea bargains.

7.    The substance of any formal or informal agreements made by the United States, the District of Columbia, the State of Maryland, the Commonwealth of Virginia, or other jurisdictions with any informant, witness, confidential source or cooperating individual not to charge crimes or to enter into a plea agreement and the authority for any such agreements.

8.    Information tending to show bias and/or prejudice on the part of any informant, witness, confidential source or cooperating individual whom the government intends to call at trial.

9.   Information tending to show that any informant, confidential source or cooperating individual has made contradictory or inconsistent statements relative to this case, to any related case, or to the defendant.

10.   Information tending to show that any informant, witness, confidential source or cooperating individual suffers from any material defect in perception, memory, veracity or articulation.

11.   The nature of any past or present relationship between any informant, confidential source or cooperating individual utilized in this case and the FBI, CIA, NSA, NSC, DIA, BATF, U.S. Secret Service, IRS, DEA, U.S. Customs or any other federal agency, the Metropolitan Police Department, the Maryland State Police or any other state agency, including but not limited to the date of such relationship and whether a continuing relationship exists.

12.   The exact date, time and place that any federal or state agency, and the name of the agency or agencies engaged any informant.

13.   Whether any informant utilized by the government has taken a polygraph examination regarding the allegations which are the subject of this indictment, and if so, as to each such person:

(a)   The name of the person;
(b)   The date, time and place or the examination or examinations;
(c)   How many tests were given;
(d)   How many tests the person has passed or failed to show deception;
(e)   How many tests the person has failed or showed deception;
(f)   The names and credentials of the operators;
(g)   A copy of the polygraph chart and the examiner's notes for independent evaluation by the defense;
(h)   A copy of the pretest questionnaire and answers;
(i)   The purpose for which the person was polygraphed.

10

14. Whether any informant is or was at the time of the events alleged in the indictment an abuser or alcohol or controlled substances, and if so, then a description of:

    (a)    The substance;
    (b)    The amount used;
    (c)    The extent of addiction;
    (d)    Current status with regard to alcohol or drug abuse;
    (e)    Any and all psychological or psychiatric reports concerning any informants' alcohol or drug abuse problems.

15. Whether any informants utilized by the government in this case have ever had or required any psychiatric or psychological treatment and, if so, then a description of:

    (a)    When and where the treatment occurred;
    (b)    The exact nature of the condition treated;
    (c)    Whether the informant has ever been admitted to a hospital and, if so, when and where, the diagnosis and prognosis; and
    (d)    Whether the informant is currently receiving treatment and, if so, the nature of such treatment and the nature of the condition being treated.

16. All evidence regarding any witness the government intends to call who is listed as an informant for any agency of the United States government, or any agency of state government, including but not limited to:

    (a)    The exact nature of the relationship between the witness and the agency;
    (b)    The date, time and circumstances that such relationship came into existence;
    (c)    Whether such a relationship was entered into voluntarily by the witness, or as a result of an agreement to forbear prosecution or for sentencing leniency;
    (d)    Any other reason a relationship was entered into other than a voluntary basis by the witness;
    (e)    The exact reason the relationship was established;
    (f)    The exact amount of money paid to any informant, when and by what method.

17. A full and complete statement of all promises, considerations, rewards, or inducements made by the government, its prosecutors, agents or agencies to induce or encourage any witness the government intends to call at trial and who is listed as an informant for any

agency of the United States government, wherein the government has agreed to any of the following (including the equivalent under state law):

<ol type="a">
<li>Not to prosecute said person for any crime or crimes;</li>
<li>Not to prosecute a third party for any crime or crimes where the reason for not prosecuting the third party is a consideration to the person;</li>
<li>To provide a formal grant of statutory immunity, or to provide an informal assurance that the person will not be prosecuted in connection with any testimony, cooperation, or information given;</li>
<li>To recommend leniency or a particular sentence for any crime or crimes for which the person stands convicted or is expected to be convicted;</li>
<li>To comply with any prior agreements although said witness may have previously violated a part of their agreement;</li>
<li>To recommend or not oppose a reduction of the offense level of the person under the United States Sentencing Guidelines for acceptance of responsibility;</li>
<li>To recommend to the sentencing authority under the United States Sentencing Guidelines a downward departure from the guidelines if that person provides substantial assistance to authorities;</li>
<li>To recommend or not oppose any downward departures or offense level reductions for the person under the United States Sentencing Guidelines;</li>
<li>To seal any plea or plea agreement of that person;</li>
<li>To provide favorable treatment or consideration, including but not limited to, money, expenses, subsistence, a job, a new location, a new start, etc. to the person or to friends or relatives of the person in return for that person's testimony, cooperation, or provision of information;</li>
<li>To make any beneficial recommendation, regarding the person to any state or federal agency;</li>
<li>To cooperate with any state law enforcement agency and that agency's agreement not to prosecute said person for any crime or crimes prohibited by state law; or</li>
<li>To make any other recommendation of benefit, or give any other consideration to the person or friends or relatives of said person.</li>
<li>To provide a statement to, or speak with, any law enforcement agency, prosecution official or court concerning the witness' assistance or cooperation.</li>
</ol>

18.  With respect to any informants, all materials contained in the "main files" of the FBI, DEA or other governmental agencies, including but not limited to:

<ol type="a">
<li>Correspondence requesting approval to initiate suitability and pertinence inquiry;</li>
<li>Indices checks;</li>
<li>Correspondence requesting authority to operate following suitability and pertinence inquiry;</li>
<li>NCIC inquiry and response;</li>
<li>Identification Division Report;</li>
</ol>

(f)     Local arrest records;

(g)     Credit checks;

(h)     FD 302s, DEA 6s or equivalent government agency documents in which the identity of the informant has been revealed;

(i)     FD 209s or equivalent government agency documents containing administrative information that may tend to identify the informant;

(j)     Payment request memos;

(k)     Requests to FBI HQ for additional payment authority;

(l)     Requests to FBI HQ for lump sum payment authority;

(m)     All other administrative type correspondence and any correspondence that identifies or tends to identify the informant.

19.    With respect to any informants utilized in this case, any and all information contained in any file designated by the FBI or DEA as "subfile" including, but not limited to FD 302s and DEA 6s in which the identity of the informant is concealed, inserts that conceal the identity of the informant, and annual letters.

20.    Inasmuch as the indictment alleges criminal acts beginning in 2005, the accused requests a copy of any supervisor's informant file review log or its equivalent, with respect to any informant utilized in the investigation of this case.

21.    Copies of all memoranda requesting payment for services and/or expenses to any informant, which memoranda contain a justification for the request for payment.

22.    All approvals for payment for services and/or expenses to an informant utilized in the investigation of this case.

23.    Copies of any and all teletypes or faxes furnished to the FBI HQ, DEA HQ or any other governmental agency requesting lump-sum payments to any informants and the approval for such payments with respect to any informant utilized in the investigation of this case.

24.    Whether any informant has testified or is expected to testify in connection with this case, and any proposal to pay the informant for such testimony or pay the purported expenses of the informant, and the nature of any discussions with the U.S. Attorney's Office.

25.  Any and all receipts obtained from any informants utilized in the investigation of this case or, if no receipts exist, the written justification for not obtaining a receipt.

26.  If the obtaining of a receipt was not possible, the memorandum setting forth the complete circumstances of payment.

27.  Whether any informants utilized in the investigation of this case were offered any rewards by any private individuals and, if so, the approval and all documentation relating to such reward(s).

28.  Copies of all federal tax returns of any informant utilized in this case filed during the course of the investigation and up until the time of trial.

29.  All receipts signed by prospective government witnesses or informants utilized in this case.

30.  Any and all representations made to informants concerning the potential of reward or payment for information including fees or payments, which may be earned from, forfeited assets or collected fines.

31.  Whether any informant utilized in this case has previously been used as an informant and/or a witness by any federal or state agency or in any federal or state prosecution and, if so, state:

(a)     The agency or agencies for which the individual was an informant;
(b)     The dates when such a relationship existed and the length of such relationship;
(c)     The dates when and places where the individual testified as a witness;
(d)     The exact payments the individual received for services and expenses.

32.  Any and all documentation detailing or setting forth the accomplishments by informants utilized in this case.

33. The date(s) on which all persons who were informants utilized in this case were "opened" or "closed" as informants.

34. Whether any persons are currently opened as informants.

35. Copies of all instructions required to be given any informant used on a continuing basis, any informant authorized to associate in activities, participation in which otherwise would be involvement in unauthorized past or continuing criminal activities, and any informant or confidential source providing substantial operational assistance in an undercover operation.

36. A copy of the written record in any informant's or confidential source's file of the instructions given.

37. Any authorization or approval for any informant or confidential source to engage in any activity that would constitute a crime under state or federal law if engaged in by a private person, and the written findings by supervisory officials that such conduct is necessary to obtain information or evidence and that the need outweighs the seriousness of the conduct involved.

38. Copies of pretrial services reports on any informant or confidential source prepared for any informant or confidential source that have been arrested for a federal offense.

39. Copies of presentence reports prepared on any informant or confidential source for any federal conviction or plea of guilty.

**IV.    Fundamental Fairness Requires Disclosure of Informant Information.**

In order to defend properly this case, it is imperative that the accused be furnished with the names, addresses and present locations of each and every informant and cooperating witness. Being a participant in or a witness to any charged or uncharged misconduct qualifies the informant as a material witness. The Supreme Court in *Roviaro v. United States*, 353 U.S. 53 (1957), in balancing an accused's right to fundamental fairness guaranteed by the United States

15

Constitution against the government's interest in withholding from disclosure the identity of an

informant, recognized what has become known as the "informer's privilege":

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of the law.
>
> * * *
>
> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation.

*Id*. at 60 (citations omitted).  Although the Supreme Court recognized such a privilege, it

expressly pointed out limitations on its applicability.  One such limitation "arises from the

fundamental requirements of fairness.  Where the disclosure of an informer's identity, or the

contents of his or her communication, is relevant and helpful to the defense of an accused, or is

essential to a fair determination of a cause, the privilege must give way."  *Id*. at 60-61; *accord*,

*United States v. Eniola*, 893 F.2d 383, 388 (D.C. Cir. 1990); *McLawhorn v. State of North

Carolina*, 484 F.2d 1, 4-5 (4th Cir. 1973).

The only reason for late disclosure in this case is to provide the government with an

insurmountable strategic advantage at trial.  This is not an appropriate basis for withholding this

information; therefore, an Order directing immediate production is warranted.

### V.    Mr. Dixon's Request for Early Disclosure of *Jencks* Material.

*Jencks* material should be provided to the defense so as to furnish Mr. Dixon with

sufficient time to examine and utilize this material in a meaningful manner before and during

trial.  *United States v. Holmes*, 722 F.2d 37, 40 (4th Cir. 1983).  What that means in terms of

timing depends on the specific facts and circumstances of the case.  It is clear, however, that the

Court, pursuant to the Fifth and Sixth Amendments to the United States Constitution, Rule 2 of

the Federal Rules of Criminal Procedure and its inherent supervisory powers, has the authority to override the timing provisions set forth in the *Jencks Act* and in Rule 26.2. Indeed, Rule 26.2, unlike its predecessor the *Jencks Act*, contains no language explicitly precluding the disclosure of witness statements prior to trial. *Compare* Fed. R. Crim. P. 26.2 with 18 U.S.C. § 3500(a).

The Rule also provides that the Court may make an accommodation, upon request by defendant's counsel, so that counsel is provided adequate time to make use of *Jencks* material. Fed. R. Crim. P. 26.2(d). That section states:

> Upon delivery of the statement to the moving party, the court, upon application of that party, may recess proceedings in the trial from the examination of such statement and for preparation for its use in the trial.

The prosecution should disclose *Jencks* material to defense counsel within 30 days of the hearing because it will not only assist the defendant in achieving a fair trial but also serve the public interest in expediting the fair resolution of criminal cases. *See ABA Standards for Criminal Justice*, § 11-2.2; *see, e.g., United States v. Tarantino*, 846 F.2d 1384, 1415 n.12 (D.C. Cir.), *cert. denied*, 488 U.S. 840 (1988); *United States v. Hinton*, 631 F.2d 769, 782 (D.C. Cir. 1980); *United States v. Poindexter*, 727 F.Supp. 1470, 1484-85 (D.D.C. 1989).

In *United States v. Hinton*, the District of Columbia Circuit recognized the potential impact of late *Jencks* disclosure upon the defendant's Sixth Amendment rights. 631 F.2d 769, 782 (D.C. Cir. 1980). There, during a suppression hearing, defense counsel was provided with "voluminous *Jencks* material" in the form of FBI 302s. *Id.* at 781. Our Court of Appeals held that "in the rush and confusion" of the hearing, counsel failed to recognize "the critical importance of the 302's" and, as a result, the appellant was deprived of her constitutional right to the "informed, professional deliberation of counsel." *Id.* at 782.

17

Here, in order to accomplish even a rudimentary investigation so as to begin to be able to provide effective assistance to Mr. Dixon, counsel and his investigators will require the *Jencks* material well before the jury is sworn. *See United States v. Holmes*, 722 F.2d 37, 41 (4th Cir. 1983) (Noting that providing materials one day before trial began did not "afford[] a reasonable opportunity to examine and digest" the documents.).

WHEREFORE, Mr. Dixon respectfully requests this Court to grant his request for the disclosure of information set forth above, sufficiently in advance of trial to permit defendant to prepare to investigate, meet or use such information and evidence.

Respectfully submitted,


_____/s/_____
STEVEN J. McCOOL
D.C. Bar No. 429369
MALLON & McCOOL, LLC
1776 K Street, N.W.
Suite 200
Washington, D.C. 20006
(202) 393-7088

Counsel for Damon Dixon

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 4, 2007, a copy of the foregoing was served through the electronic document filing system of the United States District Court for the District of Columbia to the following attorneys of record in the above-captioned case and *United States v. Darnell Jackson, et al.*, Criminal Case No. 06-227:

Thomas Abbenante
1919 Pennsylvania Avenue, N.W.
Suite 200
Washington, DC 20006
(for William Gray)

Rudolph Acree
1211 Connecticut Avenue, N.W.
Suite 303
Washington, DC 20036
(for Bernie Hargrove)

Jensen Egerton Barber
400 Seventh Street, N.W.
Suite 400
Washington, DC 20004-2237
(for Keith Roots)

Joseph Edmund Beshouri
419 Seventh Street, N.W.
Suite 201
Washington, DC 20004
(for Tony Hilt)

Cary Clennon
P.O. Box 29302
Washington, DC 20017-9302
(for Troy Hopkins)

Cynthia Katkish
601 Pennsylvania Avenue, N.W.
Suite 900-S No. 221
Washington, DC 20004-3615
(for Dominique Washington)

Howard Bernard Katzoff
717 D Street, N.W.
Suite 310
Washington, DC 20004
(for Lawrence Bryant)

Allen Howard Orenberg
11200 Rockville Pike
Suite 300
North Bethesda, MD 20852
(for Christopher Dobbins)

James W. Rudasill, Jr.
717 D Street, N.W.
Suite 310
Washington, DC 20004
(for John Downs)

Mitchell Mark Seltzer
717 D Street, N.W.
Suite 310
Washington, DC 20004
(for Troy Chavious)

Gary M. Sidell
1101 Connecticut Avenue, N.W.
Suite 1000
Washington, DC 20036
(for Lanika Franklin)

Nathan I. Silver, II
P.O. Box 5757
Bethesda, MD 20824-5757
(for Darnell Jackson)

Joanne D. Slaight
717 Fifth Street, N.W.
Washington, DC 20001
(for Tinesha Adams)

Paul T. Camilletti
U.S. Attorney's Office for the
  Northern District of West Virginia
217 West King Street
Suite 400
Martinsburg, WV 25401

Tom Mucklow
U.S. Attorney's Office for the
  Northern District of West Virginia
217 West King Street
Suite 400
Martinsburg, WV 25401

Emory Vaughan Cole
U.S. Attorney's Office for the
  District of Columbia
555 Fourth Street, N.W.
Washington, DC 20530

S. Elisabeth Poteat
U.S. Attorney's Office for the
  District of Columbia
555 Fourth Street, N.W.
Washington, DC 20530


_____/s/_____
STEVEN J. McCOOL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 06-308 (RBW)** |
| | ) | |
| **DAMON RAWSHAWN DIXON** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>ORDER</u>**

Upon consideration of Defendant Dixon's Motion For Early Disclosure of *Jencks* Material and Timely Disclosure of *Brady/Giglio* Material and Confidential Informants and Cooperating Witnesses the memorandum in support thereof, the government's response thereto, and the entire record in this matter, it is this ___ day of June 2007, hereby

**ORDERED**, that Defendant Dixon's motion is granted; and it is further

**ORDERED**, that the government is required to provide <u>early</u> disclosure of *Jencks* material 30 days before the suppression hearings, and it is further

**ORDERED**, all *Brady/Giglio* material shall be disclosed immediately, and it is further

**ORDERED,** that the government immediately disclose the confidential informant and cooperating witness information requested by the defense.

_____
THE HONORABLE REGGIE B. WALTON
UNITED STATES DISTRICT COURT JUDGE